UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION
In Admiralty

|  |  |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF STEVENS TOWING CO., INC., AS OWNER OF THE TUGBOAT ISLAND LOOKOUT, FOR EXONERATION FROM OR LIMITATION OF LIABILITY<br><br>Limitation Plaintiff | )<br>)<br>)<br>) Civil Action No.: 2:21-cv-545<br>)<br>)<br>)<br>) |

## COMPLAINT IN ADMIRALTY

COMES NOW Stevens Towing Co., Inc., as owner and operator of the towing vessel ISLAND LOOKOUT, O.N. 1069715, in this cause of action for exoneration from and/or limitation of liability pursuant to 46 U.S.C. § 30501 *et seq*. and Rule F of the Federal Rules of Civil Procedure, Supplemental Rules for Certain Admiralty and Maritime Claims. In support thereof, Limitation Plaintiff respectfully states, as follows:

1. This is a case of admiralty and maritime jurisdiction of the United States of America within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, as more fully described below.

2. This Court has original jurisdiction under 28 U.S.C. § 1333. Venue is proper pursuant to Supplemental Rule F(9) of the Federal Rules of Civil Procedure and Local Rule 3(c).

3. At the time of the incident forming the basis of this Complaint, Limitation Plaintiff Stevens Towing Co., Inc., (hereafter, "Stevens" or "Owner") was the owner of the self-propelled motor vessel ISLAND LOOKOUT, a U.S. flagged vessel of 127 gross tons burden, Official No. 1069715 (the "Vessel").

4. As of the filing of this Complaint, the Vessel is present within this judicial district. Venue is proper in this Court pursuant to Supplemental Admiralty Rule F(9).

5. On or about November 12, 2020 the Vessel commenced a voyage (the "Voyage") in which it undertook to tow the barge BH2903 (the "Barge" or "Tow"), laden with a cargo of shredded steel, from the Sparrows Point Terminal in Baltimore, Maryland, to Hertford, North Carolina via the Chesapeake Bay and the Atlantic Intracoastal Waterway ("ICW").

6. At no time relevant hereto did Owner have any proprietary interest in the Barge or its cargo.

7. As of the commencement of the Voyage, the Vessel was tight, staunch, strong, seaworthy, crewed by competent seamen, and in all respects properly manned, fitted, and equipped for the Voyage.

8. On or about November 14, 2020, in the course of the Voyage, the Vessel and her Tow were in navigation upon the Atlantic Intracoastal Waterway ("ICW") heading southbound toward the Centerville Turnpike Bridge, after having transited the locks at Great Bridge, Virginia.

9. As the Vessel and her tow approached the Centerville Turnpike Bridge at approximately 0430 hours, the Vessel's Mate on watch timely hailed the Centerville Turnpike Bridge tender multiple times on VHF Channel 13 to request a bridge opening, slowing after each unanswered call. While the Vessel was still at least half a mile and six minutes away from the bridge, the swing bridge tender responded on Channel 13 and instructed the Mate to "bring it on through." At the time of the swing bridge tender's instructions, there was ample time for the bridge to be fully opened before arrival of the Vessel and tow. Thereafter, the bridge tender did not provide any other instructions or communications to the Vessel.

10. The bridge tender negligently failed to promptly operate and open the bridge despite his instruction to the Vessel's Mate on watch to "bring it on through," indicating that the bridge would be open and ready for the passage of the Vessel and its tow upon its arrival.

11. As the Vessel and Barge approached the bridge opening, the Vessel's Mate on watch observed that the bridge was still moving but not fully opened, despite the bridge tender's instruction to "bring it on through." The Mate on watch reversed the Vessel's propulsion throttles to back the Vessel in full.  Notwithstanding the backing efforts, which nearly brought the Vessel and Barge to a full stop, the starboard bow of the Barge and a portion of the Centerville Turnpike Bridge span made contact, causing damage to the bridge and to the Barge.

12. On or about April 15, 2021, the Owner received a written letter of representation from counsel for the City of Chesapeake, asserting a right of recovery for all costs arising as a result of the bridge contact.

13. The alleged incident(s) and any losses and damages caused thereby or otherwise incurred during the Voyage were not due to any fault, negligence or lack of due care on the part of Stevens, nor were the incident(s), losses or damages occasioned by any unseaworthiness of the Vessel.  The bridge contact was not caused or contributed to by any fault or negligence within the privity or knowledge of the Owner.

14. Owner therefore invokes the benefits of the Limitation of Shipowners' Liability Act, 46 U.S.C. § *et seq*., and Rule F of the Federal Rules of Civil Procedure, Supplemental Rules for Certain Admiralty and Maritime Claims. In this regard, Owner will show that neither it nor the Vessel are liable to any extent and are entitled to exoneration from liability for all losses, damages or injury occasioned by reason for the matters aforesaid. Alternatively, and without admitting liability, Owner will show that, in the event it is liable to any parties by reason of the matters

aforesaid, the Owner is entitled to limit its liability to the value of the Vessel as of the close of the Voyage.

15. As of the close of the Voyage, the Vessel had, upon information and belief, a value and insured value of $1,273,000.00, plus pending freight of $44,000.

16. The Vessel has not been arrested or attached, and Owner is not aware of any other pending suits or libels against it or the Vessel based on the aforesaid casualty.

17. It is believed that the City of Chesapeake, Virginia, owner and operator of the Centerville Turnpike Bridge, and possibly other persons whose identities are at present unknown to the Owner, may assert claims against the Owner.

18. Owner fears that the amount of damages and/or claims described above and all other possible claims against the Owner and Vessel may exceed the value of the Owner's interest in the Vessel and her pending freight. Owner proposes to file with the Court security in the form of a bond from a federally-approved surety, in an amount equal to the Owner's interest in the Vessel and its pending freight, plus costs and interest at the rate of 6 percent per annum from the date of the security. Subject to an appraisal of ISLAND LOOKOUT, Stevens herewith deposits with the Court, as security for the benefit of claimants, a Stipulation for security in the sum of One Million Three Hundred Eighty-Seven Thousand U.S. Dollars ($1,317,000.00), which amount equals the total value of ISLAND LOOKOUT and pending freight at the time of the incident, plus interest at six percent (6%) per annum from the date of said Stipulation.

19. This limitation is timely filed pursuant to 46 U.S.C. § 30511 and Supplemental Admiralty Rule F.

WHEREFORE, Owner respectfully requests:

a. That this Court enter an order approving the above-described stipulation for security, in the amount of One Million Three Hundred Eighty-Seven Thousand U.S. Dollars

($1,317,000.00), deposited with the Court by Stevens as security for the value of ISLAND LOOKOUT and pending freight;

  b. That this Court issue a Notice to all persons asserting claims arising from the incident above, admonishing them to file their respective claims with the Clerk of this Court and serve a copy thereof on the attorneys for Limitation Plaintiff on or before a date to be fixed in such Notice;

  c. That this Court order publication of such Notice in accordance with the applicable rules;

  d. That this Court issue an injunction restraining and enjoining the filing or prosecution of any and all suits, actions or proceedings already commenced or to be commenced and the commencement and prosecution thereafter of any and all suits, actions or proceedings of any nature or description in any jurisdiction against Stevens as aforesaid or against ISLAND LOOKOUT, or against any other property of Stevens except in this action, to recover damages for or in respect of any loss, damage, injury, death or destruction done, occasioned or incurred during the voyage of ISLAND LOOKOUT described above;

  e. That this Court enter, upon motion or trial of this matter, a judgment exonerating the Owner and dismissing with prejudice at claimants' cost all claims which may be filed herein; or, in the alternative, judging that the Owner is entitled to limit its liability to the value of its interest in the Vessel immediately after the incident; and

  f. That this Court enter an order that the Limitation Plaintiff and the Owner be granted such other relief to which they show themselves justly entitled.

Respectfully submitted this 27th day of September, 2021.

            **STEVENS TOWING CO., INC.**

            */s/ Steven M. Stancliff*
            Steven M. Stancliff (VSB No. 73853)
            CRENSHAW, WARE & MARTIN, PLC
            150 W. Main Street; Suite 1500
            Norfolk, VA  23510
            Tel: (757) 623-3000
            Fax: (757) 623-5735
            sstancliff@cwm-law.com
            cwgrandy@cwm-law.com
            *Counsel for Limitation Plaintiff*
            *Stevens Towing Co., Inc.*

and

            Ryan Gilsenan (Fed. ID No. 9837)
            (*Pro hac vice application pending*)
            HINES & GILSENAN LLC
            1535 Hobby Street, Suite 203D
            Charleston Navy Yard
            North Charleston, SC  29405
            Tel: (843) 266-7577
            Fax: N/A
            gilsenan@hinesandgilsenan.com
            *Counsel for Limitation Plaintiff*
            *Stevens Towing Co., Inc.*